**FILED**

**March 22, 2017**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 2:56 PM**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT CHATTANOOGA

| | | |
|---|---|---|
| DAMIONE ICE, | ) | |
| Employee, | ) | Docket No.: 2016-01-0366 |
| v. | ) | |
| DION DAVE AND ANITA DAVE | ) | State File No.: 57572-2016 |
| (NETIA REEL-DAVE), D/B/A D & N | ) | |
| TRANSPORTATION, INC. AND/OR | ) | Judge Thomas Wyatt |
| DNT TRANSPORT, | ) | |
| Uninsured Employers. | ) | |

## EXPEDITED HEARING ORDER FOR MEDICAL AND TEMPORARY DISABILITY BENEFITS (DECISION ON THE RECORD)

This matter came before the undersigned Workers' Compensation Judge on March 19, 2017, upon a Request for Expedited Hearing (REH) for a decision on the record filed by the employee, Damione Ice. Mr. Ice presents several issues for decision, including: (1) which of two entities employed him on the date of alleged injury; (2) whether he was an employee or independent contractor on the date of alleged injury; (3) whether the person and/or entity for which he worked on the date of injury regularly employed five or more employees; and (4) whether he is entitled to recover from the Uninsured Employers Fund. For the reasons set forth below, the Court finds Mr. Ice is entitled to the requested benefits from the entity found to be his employer, and further is eligible for payments from the Uninsured Employer's Fund.

### History of Claim

Mr. Ice is a forty-four-year-old resident of Chattanooga, Hamilton County, Tennessee who suffered second-degree burns to his right hand and left thumb when scalded by hot liquid while removing the radiator cap of an overheated truck. The incident occurred April 28, 2016, in Graniteville, South Carolina and resulted in Mr. Ice undergoing emergent skin-graft surgery at Doctors Hospital in Augusta, Georgia the next day.

1

In his affidavit filed with the REH, Mr. Ice alleged that he was an employee of Dion Dave and Anita Dave, "who had a business they operated under the name of D & N Transportation, Inc." (D & N.) Mr. Ice also submitted paystubs that documented he received checks drawn on the account of D & N in payment for loads he delivered during the two weeks immediately preceding the date of his injury.

While neither Dion Dave nor D & N[1] responded to Mr. Ice's claim, Netia Reel-Dave, whom Mr. Ice identified as "Anita Dave," filed a responsive affidavit.[2] In the affidavit, Ms. Reel-Dave stated that she operates DNT Transport (DNT), a sole proprietorship. She stated that she contracted with Mr. Ice "in the first part of [2016]" to drive a truck for her. Counsel for Ms. Reel-Dave contends Mr. Ice was driving for DNT on the date of injury.

The record establishes that, on and before the date of Mr. Ice's injury, substantial connections existed between Ms. Reel-Dave and her sole proprietorship, DNT, and Mr. Dave and his defunct corporation, D & N. While Ms. Reel-Dave stated in her affidavit that Mr. Dave drove for her on an "emergency, as-needed basis," the record contains a July 26, 2015 lease agreement in which D & N contracted to haul freight for DNT. Furthermore, evidence in the record indicates Ms. Reel-Dave and Mr. Dave operated DNT and D & N in a closer alignment with each other than would be expected if the only arrangement between the parties were a lease agreement. A sworn statement of Kenneth L. Ervin indicates he drove for D & N from 2010 to 2014, and then for DNT from September 2015 until June 2016. Mr. Ervin supplied pay records documenting that, during the initial part of his employment by DNT, he received pay for delivering loads for DNT by checks drawn on the account of D & N. Yarshaunjania Threatt testified by sworn statement that both "Deon and Nita Dave" controlled her work and scheduled her hours when she drove for DNT.

The record also contains a February 27, 2016 check payable to the Tennessee Department of Labor and Workforce Development drawn on the account of D & N Transportation, Inc. Netia Reel signed the check on behalf of D & N. Also, in her affidavit, Ms. Reel-Dave claimed that Mr. Ice worked for DNT on and before the date of injury.[3] However, the check stubs submitted by Mr. Ice indicate D & N paid him for the loads he delivered in the two weeks preceding the date of injury.

---

[1] The record includes a document from the Tennessee Secretary of State that lists Dion Dave as the registered agent for service of process of D & N Transportation, Inc. The same document also indicates that the State of Tennessee revoked D & N Transportation, Inc.'s charter and dissolved the corporation on January 9, 2016. (Ex. 15.)

[2] Counsel for Ms. Reel-Dave informed the Court that Netia Reel-Dave is the same person as the "Anita Dave" referred to by Mr. Ice in the papers he filed in this claim.

[3] Ms. Reel-Dave's affidavit indicates that Mr. Ice drove for DNT "in the first part of [2016]."

2

The record contains no evidence that the putative employers carried workers' compensation coverage on the date of Mr. Ice's injury. In fact, the Amended Expedited Request for Investigation Report prepared by the Bureau confirmed that the named employers did not have workers' compensation policies covering their drivers on the date of Mr. Ice's injury. Ms. Reel-Dave claimed in her affidavit that she was not required to obtain workers' compensation coverage because (1) she used only independent contractors to drive her trucks, and (2) she never contracted with more than two to three drivers at any given time.

Neither of the named employers paid workers' compensation benefits to Mr. Ice. Because of this fact, he filed a Petition for Benefit Determination seeking payment of medical bills totaling $39,353.22 for treatment of his burns and temporary disability benefits from April 28 to July 27, 2016. When mediation failed to resolve the parties' disputes, the mediator issued a Dispute Certification Notice.

Mr. Ice filed an REH seeking a decision on the record without an evidentiary hearing. Neither of the putative employers requested an evidentiary hearing. Upon reviewing the record, the Court found it needed no additional information to determine whether Mr. Ice is likely to prevail at a hearing on the merits regarding the issues raised in his request. The Court provided the parties an opportunity to object to the evidence submitted for its consideration; none of the parties did so. Accordingly, the Court will decide Mr. Ice's REH on the record. *See* Court of Workers' Comp. Claims Prac. & Proc. 7.02 (March, 2017).

## Findings of Fact and Conclusions of Law

### *Standard applied*

Mr. Ice bears the burden of proof on all elements of his workers' compensation claim. Tenn. Code Ann. § 50-6-239(c)(6) (2016); *see also Buchanan v. Carlex Glass Co.*, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *5 (Sept. 29, 2015). However, he need not prove every element of his claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7- 9 (Mar. 27, 2015). At an expedited hearing, Mr. Ice has the burden to come forward with sufficient evidence from which this Court can determine he is likely to prevail at a hearing on the merits. *Id.*

### *Who Is Mr. Ice's Employer?*

The Court first addresses which of the named employers employed Mr. Ice on the date of injury. Pertinent to this issue, the Court notes that neither Mr. Dave nor any person on behalf of D & N denied that Mr. Ice drove for D & N on the date of injury. The fact that D & N paid him for the loads he delivered in the two weeks immediately

3

preceding the injury corroborates the allegation in Mr. Ice's affidavit that he was driving for D & N when injured. The Court questions the averment in Ms. Reel-Dave's affidavit that Mr. Ice drove only for DNT on the date of injury. The record establishes a number of occasions in which Ms. Reel-Dave acted on behalf of D & N and, in fact, the evidence makes it difficult to separate one trucking enterprise from the other. Accordingly, the Court holds Mr. Ice will likely prevail at a hearing on the merits in proving that he drove for D & N on the date of injury.

*Was Mr. Ice an Independent Contractor on the Date of Injury?*

The Court next considers whether Mr. Ice was an independent contractor on the date of injury. Here, none of the named employers came forward with evidence that Mr. Ice signed a lease agreement under which he delivered loads for D & N. In the absence of a lease agreement, the Court accredits Mr. Ice's testimony that he was an employee of D & N on the date of injury.

In further analyzing the employee-independent contractor issue, the Court considers Tennessee Code Annotated section 50-6-102(12)(D)(i) (2016), which lists the following factors for consideration in determining whether a person working for pay is an employee or independent contractor:

1.    the right to control the conduct of the work;
2.    the right to terminate;
3.    the method of payment;
4.    the freedom to select and hire helpers;
5.    the furnishing of tools and equipment;
6.    self-scheduling of working hours; and
7.    the freedom to offer services to other entities.

While none of the above factors is necessarily determinative of whether an employment or an independent contractor relationship exists, the Supreme Court has held that a party's right to control another party's work is a factor that generally indicates the existence of an employer-employee relationship. *Galloway v. Memphis Drum Serv.*, 822 S.W.2d 584 (Tenn. 1991).

The record here does not refute the statement in Mr. Ice's affidavit that he was an employee of D & N on the date of injury. The Court infers from Mr. Ice's description of his employment relationship with D & N that the latter provided him the truck he was driving and the load he was delivering on the date of injury. In the context of the trucking industry, the Court finds the fact that D & N provided Mr. Ice a truck to drive and a load to deliver indicates D & N sufficiently controlled Mr. Ice's work to justify a finding that Mr. Ice was an employee of D & N at the time he was injured. In view of the

4

above, the Court holds that Mr. Ice will likely prevail at a hearing on the merits in establishing that he was an employee of D & N on the date of injury.

*Can D & N Avoid Liability Because It Employed Fewer than Five Employees on the Date of Injury?*

The Court next addresses whether the law bars Mr. Ice from recovering workers' compensation benefits because D & N employed fewer than five employees on the date of injury. For purposes of determining the applicability of the Workers' Compensation Law to a given employer, Tennessee Code Annotated section 50-6-102(13) (2016) defines a covered employer as "any individual, association or corporation . . . using the services of not less than five (5) persons for pay." A thorough review of the record indicates that D & N did not claim it employed fewer than five employees on the date of injury. In fact, the record is silent as to the number of drivers D & N actually did employ on the date in question.[4]

In considering whether this lack of evidence precludes Mr. Ice from recovery, the Court notes the Supreme Court in *Gamus v. Asher,* 561 S.W.2d 756, 759 (Tenn. 1978), held that coverage under the Workers' Compensation Law attaches to an employer on the first day the employer has five or more persons who may be classified as regular employees. The Supreme Court went on to hold that, once coverage attaches, the employer may not negate its liability to pay workers' compensation benefits by simply reducing its workforce below five regular employees. Instead, the employer must comply with the administrative procedures to withdraw from coverage before it can avoid its obligation to pay workers' compensation benefits by employing fewer than five employees. *See also Whitehead v. Watkins,* 741 S.W.2d 327, 329 (Tenn. 1987).

Here, the record indicates D & N hired more than five regular drivers from 2009 to 2012. The record does not contain evidence that D & N ever thereafter administratively established its right to avoid workers' compensation coverage due to the employment of fewer than five drivers. Accordingly, the Court holds that, at a hearing on the merits, Mr. Ice will likely prevail in establishing that D & N cannot avoid paying him workers' compensation benefits because it employed fewer than five employees on the date of injury.

*Did Mr. Ice Establish His Entitlement to Medical and Temporary Disability Benefits?*

Under Tennessee law, an alleged injury is compensable only if it arises primarily out of and in the course and scope of employment. Tenn. Code Ann. § 50-6-102(14)

---

[4] The Court does not consider Ms. Reel-Dave's claim that DNT never used more than two drivers at any given time pertinent to the determination of the number of employees employed by D & N.

(2016). Further, the employee must establish the work-relatedness of his or her injury to a reasonable degree of medical certainty. Tenn. Code Ann. § 50-6-102(14)(C) (2016).

The named employers did not challenge Mr. Ice's allegation that he suffered burns while removing the radiator cap on an overheated truck on April 28, 2016. In support of his claim, Mr. Ice submitted records from Doctors Hospital in Augusta, Georgia that document his treatment on April 28 and 29, 2016, in the hospital's burn center. (Ex. 3.) The records document that, on several occasions during the treatment process, Mr. Ice gave a history of suffering burns when exposed to hot liquid while removing the radiator cap on a truck. *Id.* at 9, 16, 21, 26. The records further document that the treating physicians at Doctors Hospital diagnosed Mr. Ice with second-degree burns to the fingers on his right hand, the top of his right hand, and his left thumb. *Id.* at 6, 7, 9, 14, 16, 22, 26, 31.

Under the law applicable prior to the 2013 reforms to the Workers' Compensation Law, an employee was not required to prove an obvious injury. However, in *Willis v. All Staff,* 2015 TN Wrk. Comp. App. Bd. LEXIS 42, at *27 (Nov. 9, 2015), our Appeals Board held:

> Prior to the 2013 Workers' Compensation Reform Act, the law was clear that a workers' compensation claimant did not have to establish by expert medical testimony a causal relationship between the injury and the claimant's employment in "the most obvious, simple and routine cases." *Orman v. Williams Sonoma, Inc.,* 803 S.W.2d 672, 676 (Tenn. 1991). In light of the new statutory language found in sections 50-6-102(13)(B) and 50-6-102(13)(C), it is unclear whether expert medical testimony is now required in cases deemed to be "obvious, simple and routine."

Although the issue of the necessity of medical evidence to establish the causation of obvious injuries remains undecided, the Court is satisfied that the evidence in this case establishes Mr. Ice did sustain the burns he described in his affidavit and that the burns occurred in the manner he claimed. While the Doctors Hospital records do not contain an express opinion from a physician that Mr. Ice suffered his burns when exposed to hot liquid while removing a radiator cap, the records do document that Mr. Ice consistently gave that history to several of the providers who treated his burns. Furthermore, the records irrefutably establish Mr. Ice underwent skin-graft surgery on April 29, 2016, for second-degree burns to his right hand and left thumb. Accordingly, the Court holds that, at a hearing on the merits, Mr. Ice likely will prevail in establishing that he suffered his burns while removing a radiator cap on the truck he was driving for D & N.

The Court likewise holds that, at a hearing on the merits, Mr. Ice likely will prevail in establishing that his compensable burns necessitated the treatment he received at Doctors Hospital. Accordingly, the Court holds Mr. Ice is entitled to medical benefits,

including payment for the bills referenced above. D & N shall pay the bills in question pursuant to the records introduced into evidence here.

Regarding Mr. Ice's claim for temporary disability benefits, the Court notes the record establishes that the treating providers at Doctors Hospital totally disabled him from working between April 29, 2016, and May 31, 2016. (Ex. 2 at 8.) The record is silent as to Mr. Ice's capacity to work after May 31, 2016. Accordingly, the Court holds Mr. Ice is entitled to temporary total disability benefits from April 29, 2016, to May 31, 2016, a period of four weeks, five days.

The record provides sparse information regarding Mr. Ice's earnings history while employed by D & N. In his affidavit, he claims he worked twelve weeks for D & N before the date of injury; however, the record only documents the amounts D & N paid him during the two weeks immediately preceding the date of injury. The available records indicate Mr. Ice earned an average weekly wage of $675.00, thus the Court holds he is entitled to temporary total disability benefits for four weeks, five days, at the compensation rate of $450.00 per week for a total of $2,121.40.

*Is Mr. Ice Entitled to Benefits from the Uninsured Employers Fund?*

Although this Court holds D & N must provide Mr. Ice medical and temporary benefits, it is unclear whether payment will be forthcoming, as D & N did not have workers' compensation insurance at the time of the accident. Under Tennessee Code Annotated section 50-6-801(d) (2016), the Bureau has discretion to pay limited temporary disability and medical benefits to employees who have established medical causation of their injury and who meet the following criteria:

1. The employee worked for an employer who failed to carry workers' compensation insurance;
2. The employee suffered an injury primarily arising in the course and scope of employment after July 1, 2015;
3. The employee was a Tennessee resident on the date of the injury;
4. The employee provided notice to the Bureau of the injury and the employer's failure to provide workers' compensation insurance no more than sixty days after the injury occurred; and
5. The employee secured a judgment for workers' compensation benefits against the employer for the injury in question.

Here, the evidence establishes the first element required for recovery, namely, D & N was an uninsured employer. Next, Mr. Ice established by the standard applicable at an Expedited Hearing that he suffered an injury arising primarily out of and in the scope of his employment with D & N on April 28, 2016. As to the residency requirement of section 50-6-802(d), Mr. Ice resided in Tennessee at the time of his injury. As to the

7

requirement that Mr. Ice give the Bureau notice of his injury and his employer's uninsured status, the Court notes that the record contains the Amended Expedited Request for Investigation Report of the Bureau's Compliance Specialist. This report indicates that, on May 10, 2016, twelve days after the date of injury, the specialist received an RFI (Request for Investigation) of D & N arising out of Mr. Ice's injury. Accordingly, Mr. Ice complied with the applicable notice provision.

The Court, therefore, holds Mr. Ice meets all the criteria to qualify as an eligible employee under Tennessee Code Annotated section 50-6-801 et seq.

**IT IS, THEREFORE, ORDERED** as follows:

1. Medical care for Mr. Ice's injuries, including services already received, shall be paid, and the treating physician at Doctors Hospital, Augusta, Georgia, shall serve as the authorized treating physician.

2. Mr. Ice is entitled to receive temporary disability benefits from April 29, 2016, until May 31, 2016, in the amount of $2,121.40.

3. Mr. Ice is eligible to receive temporary disability and medical benefits from the Uninsured Employer's Fund pursuant to Tennessee Code Annotated section 50-6-801 et seq. The clerk shall forward a copy of this order to the Administrator for consideration of payment.

4. This matter is set for a scheduling hearing on June 5, 2017, at 10:00 a.m. Eastern Time. The parties shall call 855-747-1721 (toll-free) or 615-741-3061 at the scheduled time to participate in the conference. A party's failure to call in at the scheduled time will result in the Court making decisions without the absent party's participation.

5. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2016). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED** this the 22nd day of March, 2017.

_____
**THOMAS WYATT**
**Workers' Compensation Judge**

## Appendix

Technical Record:

1. PBD filed July 29, 2016;
2. DCN filed September 13, 2016;
3. REH, filed January 4, 2017;
4. Docketing Notice for On-The-Record Determination, filed March 10, 2017; and
5. Response of Uninsured Employer, filed March 9, 2017.

Exhibits:

1. Affidavit of Damione Ice;
2. Records of Doctors Hospital, Augusta, Georgia provided to Mr. Ice;
3. Records of Doctors Hospital, Augusta, Georgia;
4. Billing Records of Doctors Hospital, Augusta, Georgia;
5. Billing Records of Anesthesia Consultants of Augusta, LLC;
6. Records documenting payments from D & N Transportation, Inc. to Mr. Ice;
7. Sworn Worker Information Form of Kenneth L. Ervin;
8. Sworn Worker Information Form of Yarshaunjania Threatt;
9. Employer Questionnaire completed by Netia Reel-Dave;
10. Affidavit of Netia Reel-Dave;
11. Amended Expedited Request for Investigation Report filed by the Tennessee Bureau of Workers' Compensation;
12. 2009-2013 Payroll Records of D & N Transportation, Inc.;
13. Lease Agreement between D & N Transportation, Inc. and Netia Reel-Dave, d/b/a DNT Transport;
14. Tennessee Secretary of State filing information on D & N Transportation, Inc.;
15. D & N Transportation, Inc. check signed by Netia Reel-Dave; and
16. Bill of Lading.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 22nd day of March, 2017.

| Name | Certified Mail | Fax | Email | Service sent to: |
|---|---|---|---|---|
| Mike Wagner, Attorney | | | X | maw@wagnerinjury.com |
| Art Grisham, Attorney | | | X | art@grishamattorney.com |

PENNY SHRUM, COURT CLERK
wc.courtclerk@tn.gov

10